IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE RIVERA, | : | |
| Petitioner, | : | |
| v. | : | No. 3:15-CV-1508 |
| Warden, R.A. PERDUE, | : | (Judge Brann) |
| Respondent. | : | |

**MEMORANDUM OPINION**

**SEPTEMBER 24, 2018**

**I.    INTRODUCTION**

Jose Rivera, an inmate presently confined at the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania (FCI-Schuylkill) filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2241.  Doc. 1.  Named as Respondent is R.A. Perdue, FCI-Schuylkill Warden.  The required filing fee has been paid.

Petitioner alleges that his due process rights were violated during the course of a prison disciplinary hearing held on February 24, 2014, at FCI-Schuylkill, where he was found guilty of the prohibited act of Introduction or Making of Intoxicants, a violation of Disciplinary Code Section 111. Doc. 1, p. 1. Specifically, Petitioner raises the following three issues:

> 1. Rivera's due process rights were violated where he was not
> provided a staff representative who actually performed the function of
> assisting in the preparation and presentation of a viable defense.
>
> 2. The DHO's decision that Rivera violated Code 111 is invalid as it
> is not based upon the greater weight of the evidence.
>
> 3. The Bureau of Prisons' promulgation of a monetary fine as a
> sanction for committing offenses under its disciplinary regulation
> implicates Rivera's right to due process.

*See* Doc. 1, p.p. 4-10.

For relief, Petitioner requests an order directing Respondent "to expunge the incident report from his institutional and central office file, restore the good time credits disallowed and forfeited and reimburse the $110.00 fine imposed without authorization to his prison account." Doc. 1, p. 12.

The petition is now ripe for disposition and, for the reasons that follow, will be denied.

## II. BACKGROUND

On February 11, 2014, Petitioner was served with Incident Report No. 2547629 charging him with Introduction or Making of Intoxicants, a Code 111 violation. Doc. 4-1, p. 23. The incident report, which was written by J. Tomlinson, reads as follows:

> On February 11, 2014, at 1:00 p.m., I was conducting a search and
> inventory of the property in cell 121, Unit 3A and discovered a
> container inside the locker assigned to inmate Rivera, Jose, Reg. No.
> 18246-014, that I believed to contain homemade intoxicants. The

> substance tested positive for intoxicants with a reading of .478 on the Alco-Sensor III. Inmate Rivera, Jose, Reg. No. 1846-014, was placed in the Special Housing Unit on February 10, 2014, at 3:20 a.m., for an unrelated matter and his cell was secured at that time until I entered to inventory his property. Use of intoxicants by inmates threatens the orderly running of the institution.

*Id.* On February 14, 2014, Petitioner appeared before the Unit Discipline Committee (UDC). *Id.* Petitioner stated that he "work[s] in the barber shop and took some alcohol for [his] razor bumps on [his] neck." *Id.* Due to the severity of the incident, the UDC referred the charge to the Discipline Hearing Officer (DHO). *Id.* During the UDC hearing, a staff member informed Petitioner of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. *Id.* at p. 26.

Also on February 14, 2014, Rivera was provided with a "Notice of Discipline Hearing before the (DHO)" form. *Id.* at p. 27. He did not request a staff representative, or to call witnesses. *Id.*

On February 24, 2014, Petitioner appeared for a hearing before DHO, K. Bittenbender. *Id.* at p.p. 29-30. During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. *Id.* It was also noted that Petitioner was proceeding without a staff representative or witnesses. *Id.* Petitioner made the statement that "the report is true, I took it from the barbershop." *Id.* No procedural issues were cited and no documentary evidence

was provided for consideration. *Id*. Evidence was verbally provided by the DHO to the extent believed practical under the FOIAE/PA policy. *Id*. The inmate was advised to make any formal request for documents to the Central Office. *Id*.

In addition to the Incident Report and Investigation, the DHO considered as documentary evidence, a February 10, 2014 photograph of the bottle and Alco-Sensor III reading, taken by J. Tomlinson, SIS Technician. *Id*. The specific evidence taken from the relied upon documentary evidence was as follows:

> During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings. RIVERA's involvement in the incident, as noted in Section 11 of Incident Report 2547629, as provided by J. Tomlinson, was reviewed. Paraphrased, on February 11, 2014 at approx. 1:00 pm, I was conducting a search and inventory of the property in cell 121, Unit 3A and discovered a container inside the locker assigned to inmate RIVERA, Jose, Reg. No. 18246-014, that I believed to contain homemade intoxicants. The substance tested positive for intoxicants with a reading of .478 on the Alco-Sensor III. Inmate RIVERA, Jose, Reg. No. 18246-014, was placed in the Special Housing Unit on February 10, 2014, at 3:20 am for an unrelated matter and his cell was secured at that time until I entered it to inventory his property. Use of intoxicants by inmates threatens the orderly running of the institution.
>
> Inculpatory evidence in the form of a photograph taken by Officer Tomlinson dated 2/11/14 corroborated the evidence cited in this report. The photograph clearly depicts the intoxicants as described in the report and the positive reading the substance provided.
>
> The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report as well as the inmate's admission to the misconduct.

> Upon questioning by the DHO, Inmate RIVERA, Registration #18246-014 admitted the charge. He elaborated upon his plea by stating, the report is true. After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in paragraphs above, support(s) the finding, inmate RIVERA, Jose, Register No. 18246-014 committed the prohibited act(s) of Introduction or Making of Intoxicants, Code(s) 111 on 2/14/2014, at or about 3:20 am in Unit 3A, Cell 121 at FCI-Schuylkill, PA.

*Id*. The DHO sanctioned Petitioner to forty-one (41) days disallowance of good conduct time; 200 days forfeiture of non-vested good conduct time; sixty (60) days disciplinary segregation; six (6) month loss of phone and visiting privileges and $110.00 monetary fine. *Id*. The DHO documented his reasons for the sanctions given as follows:

> RIVERA's possession of intoxicants threatened the orderly running of this facility and potentially the safety of both staff an inmates. Intoxicants foster intoxication. Intoxicated individuals sometimes act out violently in relation to their consumption. Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish RIVERA for his behavior, while the Loss of Privileges (Phone and Visit) and a Monetary Fine is sanctioned in an effort to deter him from it in the future. The DHO finds the charge for Code 111 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

*Id*. Rivera was advised of his appeal rights at the conclusion of the hearing. *Id*.

## III. DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard

of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445-46 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

Rivera's disciplinary hearing was held in February 2014. The applicable Bureau of Prisons' inmate disciplinary procedures for this time frame are codified at 28 C.F.R. § 541.1, *et seq*., and entitled, *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to the 2014 regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. *See* 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the

inmate or staff. *See* 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Rivera was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Although Rivera argues that he "was not provided a staff representative who actually performed the function of assisting in the preparation and presentation of a viable defense," there is no indication in the record that Petitioner ever requested staff representation, or that he requested staff representation and was denied. Moreover, to the extent that Petitioner references conferring with a Mr. Price, prior to his disciplinary hearing, (*see* Doc. 1, p.6), once again, there is no evidence of record that Petitioner requested or was represented by a staff member. As such, his argument is without merit, and there is no basis to find any due process violation. *See Von Kahl v.*

*Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

To the extent that Petitioner argues that the DHO's decision is not based upon the greater weight of evidence, the record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, the DHO relied upon the following: (1) a photograph depicting the bottle containing the liquid substance and Alco-Sensor III reading of .478; and (2) the Incident Report and Investigation by J. Tomlinson, SIS Technician. After considering all the evidence, the DHO concluded that the greater weight of the evidence supported the finding of the prohibited act of Introduction or Making, of Intoxicants. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3. Petitioner was found guilty of a 100-level, a greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level offenses:

Table 1 — Prohibited Acts and Available Sanctions

Available Sanctions for Greatest Severity Level Prohibited Acts

A. Recommend parole date rescission or retardation.

B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C. Disciplinary segregation (up to 12 months).

D. Make monetary restitution.

E. Monetary fine.

F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G. Change housing (quarters).

H. Remove from program and/or group activity.

I. Loss of job.

J. Impound inmate's personal property.

K. Confiscate contraband.

L. Restrict to quarters.

M. Extra duty.

## IV. CONCLUSION

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge